**TRACOR MARINE INC., as Owners Pro Hac Vice of the RESEARCH VESSEL H. J. W. FAY et al., Plaintiffs,**

v.

**The M/V MARGOTH (ex "Carolita"), her engines, tackle, etc., et al., Defendants.**

**Civ. No. 75–0152–B.**

District Court Canal Zone, Division Balboa.

Nov. 20, 1975.

Roy Phillips, Albert J. Joyce, Jr., Balboa, Canal Zone, for plaintiffs.

Woodrow De Castro, Balboa, Canal Zone, for the M/V "Margoth" and Tico International S. A.

Henry Newell, Balboa, Canal Zone, for the Panama Ins. Co. Inc.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CROWE, District Judge.

### FINDINGS OF FACT

1. On May 14, 1975, at approximately 0220, the Research Vessel "H.J.W. FAY" (hereinafter "FAY") under the command of Capt. Ian R. Crichton, departed Cristobal, Canal Zone, bound for Port Everglades, Florida. At approximately 1430 on said May 14th personnel on the FAY sighted a vessel adrift, unlighted and abandoned in the shipping lanes; the FAY changed course and maneuvered toward the vessel which was adrift and at approximately 1505 of the same May 14th the FAY was standing by the said ship which was then identified as the M/V MARGOTH (hereinafter "MARGOTH"), a vessel of Panamanian Registry. At approximately 1600 of May 14, 1975, the Chief Mate and Wiper of FAY boarded the MARGOTH, returned to the FAY at about 1620 and reported the vessel was a derelict; at approximately 1800 three (3) men from FAY were sent back to the MARGOTH for the purpose of preparing for the salvage operation and at about 1830 a tow line was passed from FAY to MARGOTH and at about 1850 the tow line was secured. At about 1900 the FAY was underway with MARGOTH in tow toward Cristobal, Canal Zone.

The FAY arrived at Cristobal breakwater at approximately 0820/0825 of May 16th. with MARGOTH in tow, and at about 0830 of said day the Panama Canal Company Tug "J. WALLACE" was alongside. At approximately 0835 the tow line was cast off and the FAY, having left some of its crew members on board MARGOTH, proceeded to anchor in Cristobal harbour. (See "Agreed Statement of Case" in Pre-Trial Order, hereinafter "PT Order").

2. Plaintiff TRACOR MARINE INC., was at material times, and still is, a corporation of the State of Florida and bareboat charterer of the FAY, a U.S. Registry vessel. (PT Order).

3. Plaintiffs Master, Officers and Crew above named were, at material times, serving on the FAY. (PT Order).

4. Defendant MARGOTH is a dry cargo vessel of Panamanian Registry engaged, at the time, in international maritime commerce. (PT Order).

5. Defendant TICO INTERNATIONAL, S. A. was at material times, and still is, a Panamanian corporation and owns the MARGOTH. (PT Order).

6. Defendant PANAMA INSURANCE COMPANY, INC. is a Panamanian corporation and is the Hull Insurer of MARGOTH. (PT Order).

7. At approximately 1300 of May 11, 1975, the Master and crew of MARGOTH abandoned the said vessel at an approximate location of 11° 33' 0" N. latitude, 76° 20' 0" W. longitude. (Margoth's Masters Note of Protest—PT Order).

8. Representatives of owners of MARGOTH officially apprised Government of Panama that MARGOTH had sunk. (PT Order).

9. MARGOTH was a derelict, adrift in the international sealanes and was a hazard to navigation. At the time a salvage line was put on her by the FAY, she had been derelict and adrift for approximately 3 days 5½ hours.

10. MARGOTH is insured with its Hull Underwriters, Panama Insurance Company, Inc., for the sum of $120,000.-00.

11. At the time MARGOTH was brought into Cristobal anchorage in the act of salvage by the FAY, she had a value of $110,000.00.

12. At material times herein the FAY was of a value of approximately $2,000,000.00 and had on board Research equipment and instruments valued at approximately $300,000.00. (PT Order).

13. In carrying out the Salvage operation, Plaintiff TRACOR MARINE INC. incurred expenses in the sum of $42,152.33, from which shall be deducted the cash stipulation for costs and such amounts as may be in the hands of the Marshal for reimbursement to Plaintiffs.

14. At material times of the complaint MARGOTH was within the jurisdiction of this Court. (PT Order).

### CONCLUSIONS OF LAW

1. By the Agreed Statement of the Case at pre-trial and the testimony at trial, this is a typical case of maritime Salvage and is governed by the applicable law of salvage.

2. By the Agreed Statement of the Case and Stipulation of the parties the MARGOTH was "DERELICT" property. (Norris, The Law of Salvage § 131, p. 221).

3. Property found in a "derelict state" has considerable significance for it generally implies a degree of danger which is reflected in the granting of a higher award. The presence of a derelict vessel is an obstruction to navigation and a danger to commerce [The Anna, 1 Fed.Cas.No.398, p. 928 (DCSD NY 1872) aff'd. 1 Fed.Cas.No.401, p. 931 (CCNY 1873); The Henry R. Tilton, 1 Cir., 214 F. 165; The Flora Rodgers, 4 Cir., 152 F. 286]; that there is a hazard to the salving vessel in towing an unmanned or inadequately manned derelict or wreck [The Agnes Manning, 2 Cir., 59 F. 481]; and that the owner's chance of recovering derelict property is generally very slight [The Georgiana, 10 Fed.Cas.No.5355, p. 249]. With respect to the latter, i. e. "the owner's chance of recovering derelict property" being very slight, it must be mentioned that Owners of MARGOTH had reconciled to the fact of its total loss to such an extent that they had so officially reported to the Shipping Dept. of the Government of Panama.

4. The reasonable expenses incurred by Salvors are allowable. They may be included in the award or added to the award, as the Court sees fit and depending on the circumstances of each case. [See The Kanawha, as quoted in Norris, The Law of Salvage, § 211, p. 340; See also The Shreveport, 4 Cir., 42 F.2d 524]. The better practice is to include it in the award *UNLESS AN AWARD TO THE SALVING CREW IS BETING CONSIDERED IN WHICH CASE IT SHOULD BE STATED SEPARATELY FROM THE AWARD;* otherwise, the crew may be sharing in the owner's expenditures when the apportionment between owner and crew is made. [See Norris, The Law of Salvage, § 210, pp. 339/340].

5. In the case at bar an award to the salving crew is being considered and the Court will therefore make an allowance for the reasonable expenses incurred by Tracor Marine Inc. separately from the SALVAGE AWARD. [Norris, The Law of Salvage, § 210; The "M/V JOSE LUIS AZNAR", Civil No. 7583 DC Canal Zone, Balboa Division].

6. Plaintiff TRACOR MARINE INC. is entitled to recover of and from defendants MARGOTH and TICO INTERNATIONAL, S. A., jointly and severally, said plaintiff's reasonable expenses as found in the Findings of Fact, plus interest from this date at the rate of 6% per annum until paid.

7. Plaintiffs, that is to say TRACOR MARINE INC. and the Master, Officers and Crew of the FAY, are entitled to recover of and from defendants MARGOTH and TICO INTERNATIONAL, S. A., jointly and severally, a liberal SALVAGE AWARD and the Court fixes same in the sum of $34,173.-84, such sum being a moiety of the difference between the value of the MARGOTH as herein found and the expenses incurred by TRACOR MARINE INC.

in the salvage as hereinbefore determined and allowed, to be distributed amongst the Salvors after deducting Salvors' legal fees and expenses, in the proportion of ⅔ for TRACOR MARINE INC. and ⅓ for the Master and Crew.

8. Distribution of the Master's and Crew's share shall be in proportion to what their basic monthly wage bears to the total monthly basic wage of the crew, after first allowing a special bonus of $500.00 for the Master and special bonuses of $200.00 for each of the following four (4) crewmembers: John Ostensen, Brian W. Bassett, Steven McLean and Damon A. Leonard.

9. The Court has jurisdiction over the parties and the subject matter of the action.